IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ERIK LEE GLASS,

           Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

Civ. No. 3:12-cv-00627-AC

FINDINGS
AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

      Claimant Erik Lee Glass ("Claimant") seeks judicial review of the Social Security Commissioner's ("Commissioner") final decision denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA. *See* 42 U.S.C. §§ 401-433 and §§ 1381-83f (2010) (referencing the benefit terms and conditions). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court recommends a reversal of the ALJ's decision and a remand for an award of benefits.

1

FINDINGS AND RECOMENDATION                                                                             [NSB³]

*Procedural History*

Claimant filed for DIB and SSI on January 28, 2008, with a disability onset date of January 1, 2008. The claim was denied on July 1, 2008, and on June 4, 2009, after reconsideration. On August 26, 2009, a hearing was held before Administrative Law Judge Eleanor Laws ("ALJ"), who found Claimant not disabled on September 10, 2010. Claimant requested review of this decision on October 20, 2010. The Appeals Council denied this request on February 7, 2012, making the ALJ's decision final. Claimant filed for review of the final decision in this court on February 11, 2013.

*Factual Background*

Claimant was born on December 31, 1973, and has at least a high school diploma. (Tr. 22.) Claimant owns and operates a moving company. *Id.* Claimant has suffered a gunshot wound, a shattered femur, an enlarged prostate, chest pain, a dislocated shoulder, and back injuries. (Tr. 17-18, 182-89, 191, 197-98, 200, 302, 322.)

On June 17, 2002, Claimant was admitted to Providence Medical Center in Portland, Oregon due to injuries sustained in an automobile accident. (Tr. 261.) Dr. Madelene Anderson ("Dr. Anderson") diagnosed Claimant with sprain of the neck. (Tr. 262.) Dr. Anderson issued a treatment plan consisting of Ketoprofen (an anti-inflammatory), physical therapy, and a primary physician follow-up in 10 days. (Tr. 265.) Claimant was discharged in good condition. *Id.*

On April 30, 2004 Dr. Nannette Marty, M.D. ("Dr. Marty") ordered a lumbar spine CT of Claimant which was performed and analyzed by Dr. Shagufta Hasan, M.D. ("Dr. Hasan"). (Tr. 239.) Dr. Hasan found disc protrusion at L5 S1 displacing the nerve root. *Id.* On August 10, 2004, Dr. Keith S Blum, M.D. ("Dr. Blum") diagnosed

Claimant with anterior nerve root displacement due to a disc protrusion at L5-S1 level on the left side. (Tr. 182.) Dr. Blum noted clinical and radiographic findings of pain in the low back traveling around the body to the leg with a herniated disc and muscle weakness. (Tr. 183.) Claimant reported lower back discomfort, pain, and numbness extending into the left leg to Dr. Blum.

Dr. Blum warned Claimant that nerve pain could develop into incontinence, numbness, and erectile dysfunction. *Id.* Dr. Blum maintained that diagnosis with a surgery recommendation while repeating his warnings of possible worsening of symptoms from late 2004 through 2005. (Tr. 184-86.) Claimant agreed to consider the procedure and contact Dr. Blum's office for a follow-up appointment to discuss Claimant's options further. *Id.* Claimant also reported to Dr. Blum that he was previously treated by another neurosurgeon named Dr. Nagy, who recommended physical therapy. Claimant stated that Dr. Nagy no longer accepted Claimant's insurance. There are no medical files in the record related to a Dr. Nagy.

On April 25, 2005, Claimant was again admitted to Providence Medical Center in Portland, Oregon due to injuries sustained in an automobile accident. (Tr. 267.) Dr. Kristen Harris ("Dr. Harris") diagnosed Claimant with sprain of the lumbar region. (Tr. 268) Dr. Harris issued a treatment plan consisting of Vicodin, Ibuprofen, ice with alternating heat, rest and stretching, and a primary physician follow-up in two to three days. (Tr. 273.) Claimant was discharged in good condition. *Id.*

On July 21, 2005, Claimant was again admitted to Providence Medical Center in Portland, Oregon due to pain. (Tr. 274.) Dennis S. Grey, F.N.P. ("Mr. Grey") noted Claimant's previous diagnosis as sciatica. (Tr. 275) Mr. Grey issued a treatment plan

consisting of Ibuprofen, heat, stretching, and a follow-up appointment within 10 days. (Tr. 279.) Claimant was discharged in good condition. *Id.*

On November 30, 2006, Claimant was examined by Dr. Eric Dover, M.D. ("Dr. Dover"). (Tr. 192.) Dr. Dover noted a range of motion at 50 degrees of flexion and 2 degrees of extension. *Id.* Dr. Dover also noted a tingling radiculopathy. *Id.* Claimant reported to Dr. Dover that he had a moving business but had to have others do the work. *Id.* Records show that Dr. Dover prescribed Methadone for pain after requiring Claimant to sign a pain management agreement. (Tr. 192-95.) On March 19, 2007, Dr. Dover noted range of motion at 55 degrees of flexion but only one degree of extension. (Tr. 192.) On May 24, 2007, Dr. Dover dismissed Claimant as a patient due to missed appointments and an allegation of methadone misuse. (Tr. 196.)

On December 14, 2007, Claimant was again admitted to Providence Medical Center in Portland, Oregon due to pain. (Tr. 291.) Dennis S. Grey, F.N.P. ("Mr. Grey") noted Claimant's previous diagnosis as sprain or strain of the lumbar region of the back and aphasia. (Tr. 292) Mr. Grey issued a treatment plan consisting of Oxycodone, Advil, heat, stretching, and a follow-up with Dr. Dover in the next 10 days. (Tr. 279.) It is unclear from the record what the doctor-patient relationship status was between Claimant and Dr. Dover at this point. Mr. Grey also issued a modified work release. (Tr. 299.) Claimant was discharged in good condition. *Id.*

On April 29, 2008 administrative examining physician Dr. James E. Bryan, Ph.D. ("Dr. Bryan") evaluated Claimant as to his mental condition. (Tr. 203.) Dr. Bryan noted, without providing context, that Claimant was open and cordial elaborating on topics relevantly. Dr. Bryan also noted that Claimant "emphasized themes of physical

limitations, futility at his circumstances, and some entitlement to benefits regarding his condition." (Tr. 207.) Dr. Bryan added that Claimant exhibited no indication of feigning of symptoms and did not appear irritated, impatient, or resistant. Rather, Claimant was cooperative in the evaluation. *Id.*

Dr. Bryan concluded by noting Claimant's "difficulties coping with stresses, pain complaints, history of possible narcotics abuse, and potential for dysfunctional personality features contributing to some of the stresses." *Id.* Dr. Bryan also concluded that "somatoform pain disorder[1] is suggested through [claimant's] emphasis upon subjective pain and the extent to which he centers his sense of limitation in daily activities around this." (Tr. 208.)

Dr. Bryan noted that he is unable to clearly diagnose the somatoform pain disorder without an "objective medical review of [Claimant's] orthopedic status and the extent to which objective findings match his complaints" through a comprehensive pain evaluation and a psychopathology battery. *Id.* Dr. Bryan also mentioned the potential for Claimant's pain to increase to a more debilitating extent without prescription medication. *Id.*

On April 30, 2008, administrative physical examining physician Dr. Terri Robinson, M.D. ("Dr. Robinson") spent 23 minutes with Claimant to assess his physical condition. (Tr. 197.) Claimant reported that he declined surgery due to a lack of means. *Id.* Claimant also reported that he had not worked for nearly a year due to pain. *Id.*

---

[1] Somatoform Pain Disorder "is thought to be due to psychological problems. The pain that people with this disorder feel is real. It is not created or faked on purpose (malingering). . . . [P]atients with somatoform pain disorder seem to experience painful sensations in a way that increases their pain level. . . . The main symptom of somatoform pain disorder is chronic pain that lasts for several months and limits a person's work, relationships, and other activities." *Somatoform Pain Disorder*, National Institutes of Health, http://www.nlm.nih.gov/medlineplus/ency/article/000922.htm, last visited Jul. 15, 2013.

Claimant stated that he had a radiating pain that traveled down the left leg and additional pain in his rectum, groin, and toes. *Id.*

Dr. Robinson noted "no evidence of poor effort or inconsistencies." (Tr. 198.) Dr. Robinson noted a range of motion at 90 degrees of flexion and 30 degrees of extension as well as a negative straight leg test in the seated and supine positions. (Tr. 200.) Dr. Robinson also noted weakness in the right hip. *Id.* Her diagnosis included "likely degenerative joint disease of the lumbar spine and radiculopathy involving L5-S1. *Id.* She added a functional assessment of an allowable four-to-six hours of standing or walking with limitations due to decreased strength and sensation and eight hours sitting with no limitations. *Id.* Her final opinion included a weight lift-and-carry allowance of 35 pounds frequently and 50 pounds occasionally. *Id.*

## *Legal Standard*

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989);

*Andrews*, 53 F.3d at 1039-40. The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. In determining a claimant's residual functional capacity ("RFC"), an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

*Summary of the ALJ's Findings*

The ALJ engaged in the five-step "sequential evaluation" process when she evaluated Claimant's disability, as required. *See* 20 C.F.R. § 416.920 ("The Secretary has established a five-step sequential evaluation process for determining whether a person is disabled."); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting 20 C.F.R. § 416.920).

I.  Steps One and Two

At step one, the ALJ concluded that Claimant had not engaged in any substantial gainful activity since the onset of his alleged disability. (Tr. 17.) At step two, the ALJ determined that Claimant had the following severe impairments: degenerative joint disease of the lumbar spine and history of low back injury with a herniated disc. (Tr. 17.) The ALJ also determined that Claimant had the following non-severe impairments: an

adjustment disorder with depressed mood; a pain disorder; and provisional diagnoses of a personality disorder NOS; and cannabis and opioid abuse. (Tr. 18.) The ALJ's specific findings, regarding each impairment, are detailed below.

### A. Degenerative Joint Disease and Low Back Injury

Claimant sustained a back injury in 2002 from a car accident. (Tr. 261-62.) He initially complained of pain in his left leg radiating from his lower back. (Tr. 182.) A CT-scan revealed a protruding disc and nerve root compression. (Tr. 187-89.) As a result of the injury, Claimant was unable to return to his job as a mover, but was able to hire helpers to perform the physical labor. (Tr. 20.)

Dr. Blum noted that the size of the disc protrusion would likely lead to recurrent problems including further "problems with his right leg, numbness, and possible bowel, bladder, or erectile dysfunction." (Tr. 183.) Dr. Blum recommended physical therapy. *Id.* Dr. Blum suggested surgery as an option during a follow-up visit. (Tr. 184.) Claimant agreed to consider surgery. *Id.* Claimant was able to tolerate his normal activities at this point according to Dr. Blum. *Id.* While a straight leg test was positive at 60 degrees, Claimant did report experiencing improvement from medication. *Id.* Claimant was not ready to proceed with surgery. (Tr. 186.) It was later revealed that Claimant was unable to afford the procedure. (Tr. 197.) The ALJ noted that Claimant had degenerative disc disease and a history of low back injury with a herniated disc at L5-S1. (Tr. 17.)

### B. *Psychological Disorders and Substance Abuse*

Claimant reported that he experienced depression and frustration due to his pain and physical limitations. (Tr. 204.) The medical records submitted do not indicate a significant history of depression. The ALJ noted that

> the claimants medically determinable mental impairments of: an adjustment disorder with depressed mood; a pain disorder; provisional diagnosis of a personality disorder [not otherwise specified]; and cannabis and opioid abuse, considered singly and in combination, do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

(Tr. 18.)

## II.   Step Three

At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listing as set forth in the regulations. (Tr. 19.) The ALJ stated that "[i]n making this finding, the undersigned considered listing number 1.04" and "[b]ecause there are no medical findings or suggestions in the medical record that any of the claimant's impairments meet the conditions or severity requirements for any listed impairment, they do not meet or medically equal a listing." *Id.*

## III.   Claimant's Residual Functional Capacity ("RFC")

The ALJ concluded that

> [T]he undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b). He can occasionally stoop, crouch, and crawl and can frequently climb, balance, and kneel; and he should avoid moderate exposure to hazards.

## IV.   Step Four

At step four, the ALJ concluded that Claimant could not perform any past relevant work. (Tr. 22.) ALJ noted Claimant's moving business and found that he was unable to perform this work given his RFC and the vocational expert's testimony. *Id.*

V.   Step Five

At step five, the ALJ concluded that Claimant was capable of performing other work that exists in substantial numbers in the national economy. (Tr. 22-23.) The vocational expert testified, in response to the ALJ's hypothetical, that Claimant was capable of acting as a garment sorter, a cleaner or housekeeper, and a mail clerk. ALJ found that each of these jobs are available both regionally and nationally. (Tr. 23.)

*Discussion*

Claimant argues that the ALJ erred in three ways: (1) the ALJ erred by rejecting Plaintiff's statements and testimony about his pain and limitations; (2) the ALJ failed to adequately explain her adverse determination at step three; and (3) Claimant meets listing 1.04. For the reasons that follow, the court finds that the ALJ's decision was in error.

I.   Claimant Credibility

The ALJ has not provided clear and convincing support for her credibility finding. Ninth Circuit precedent holds that where there is an impairment that may reasonably produce the alleged symptoms:

> [w]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of [her] pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.

*Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999) (internal citations omitted). The findings must be "sufficiently specific to permit the court to conclude that the ALJ

10

FINDINGS AND RECOMENDATION                                              [NSB³]

did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.2002). An ALJ's reasons for discrediting a Claimant's credibility must be supported by substantial evidence in the record. *Id.*

Claimant argues that the ALJ's reasons for rejecting Claimant's testimony were neither clear nor convincing. The Commissioner argues that the ALJ gave several reasons for questioning Claimant's credibility. First, Claimant failed to pursue appropriate treatment, despite his claims of disabling pain. Second, Claimant was dismissed from a treating physician for prescription drug misuse and missed appointments. Third, Claimant's reported activities of daily living were inconsistent with total impairment. (Tr. 45-46.) To the extent these factors informed the ALJ's credibility determination, it was error.

1. Failure to pursue treatment

The ALJ's finding that Claimant failed to pursue a consistent treatment regimen and failed to consent to surgery is not supported by substantial evidence in the record. Additionally, the ALJ erred by using Claimant's surgery refusal as reason to discount his credibility. A claimant "must follow treatment prescribed by [the treating] physician if this treatment can restore [the] ability to work. CFR 20 404.1530(a). Claimants are required to provide a good reason for failing to follow prescribed treatment. CFR 20 404.1530(b). "Acceptable reasons for failure to follow prescribed treatment" include refusal of treatment that "because of its magnitude, unusual nature, or other reason" it would prove risky for the claimant. CFR 20 404.1530(c)(4).

It is inappropriate for an ALJ to base a credibility finding on a claimant's refusal to undergo surgery that is inherently dangerous and merely recommended. *Maxwell v.*

11
FINDINGS AND RECOMENDATION                                                           [NSB³]

*Astrue*, 2012 WL 4035538 5-6 (E.D. Cal. Sept. 12, 2012). Additionally, the Ninth Circuit has held that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ may, however, conclude that failure to pursue treatment commensurate with the stated level of impairment or pain undermines a claimant's credibility. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (concluding that a failure to seek treatment may inform an ALJ's credibility determination).

Here, the ALJ noted Claimant's failure to pursue a consistent treatment regimen or consent to a medical procedure. The record shows, however, that Dr. Blum recommended but did not prescribe surgery. (Tr. 183-86.) Claimant considered surgery but ultimately decided against it because of the financial burden. (Tr. 197.) As Ninth Circuit precedent demonstrates, a lack of funds justifies Claimant's failure to follow recommended treatment. Therefore, it is reasonable for the court to excuse the Claimant's failure to undergo a serious surgery that is merely recommended but not financially feasible to the Claimant. It also bears noting that the record does not otherwise reveal a substantial lack of compliance by Claimant. As a result, the ALJ's finding that Claimant failed to follow prescribed treatment or pursue a consistent treatment regimen is not supported by substantial evidence.

2. Treating physician dismissal

The dismissal of Claimant from Dr. Dover's care is not a clear or convincing reason to discount Claimant's credibility. An ALJ must provide a clear and convincing reason to discount a claimant's credibility. *Morgan*, 169 F.3d at 599. In *Harrelson, Harrelson v. Astrue*, 273 F. App'x 632, 636 (9th Cir. 2008), the methadone misuse and

dishonesty alone did not constitute a clear and convincing reason to discount the claimant's credibility when unsupported by substantial evidence in the record. Like *Harrelson*, Claimant here was accused of methadone misuse by Dr. Dover in the form of a letter. (Tr. 196.) Claimant also missed appointments which resulted in his dismissal from Dr. Dover's care. *Id.* Besides the opinion of the consulting physicians based on a single visit, the record does not reveal dishonesty or drug seeking behavior[2] by the Claimant indicating a propensity for methadone misuse. Appointments may be included in an ongoing treatment plan but it is unclear whether an appointment is considered a prescribed treatment. Accordingly, Dr. Dover's dismissal letter is not a clear and convincing reason to discount Claimant's credibility.

3. Reported activities

Claimant's reported daily activities are not clear and convincing reasons to Claimant's credibility. An ALJ may rely on reported daily activities to support a disability determination. *Webber v. Astrue*, 305 F. App'x 311, 313 (9th Cir. 2008). An ALJ, however, must provide a clear and convincing explanation of the reasons for that determination. *Id.* An ALJ must also explain how a claimant's daily activities transfer to the workplace. *Id.* "Reliance on unexplained, or inadequately explained failures to seek or follow treatment is also permissible," but the ALJ must consider the Claimant's explanations as well. *Id.* An "ALJ's negative credibility determination may not stand exclusively upon a lack of objective medical evidence." *Id.* The Ninth Circuit also

---

[2] Drug Seeking Behavior is indicated through exceedingly noticeable patterns of behavior by the subject. Common activities include, but are not limited to, excessive visits to the emergency room where the subject requests a medication by name, requests refills of existing prescriptions, reports lost or exhausted medication supply, and reports excessive and unverifiable sources of unusually high pain levels usually presenting with headaches, back pain, or dental pain. *How Frequently are "Classic" Drug-Seeking Behaviors Used by Drug-Seeking Patients in the Emergency Department?*, National Institutes of Health, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3556950/, last visited Jul. 15, 2013.

observed that "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Id.* (paraphrasing *Smolen v. Chater,* 80 F.3d 1273, 1284 n. 7 (9th Cir.1996)).

The Claimant asserted that his daily activities, including taking care of his children, driving, watching television, bathing, attending school, and grocery shopping were punctuated by rest. Claimant does not assert total incapacity. Rather, he argues that he is unable to return to his former occupation and that his daily activities do not permit him to successfully perform other available occupations. The Commissioner argues that, even where Claimant's daily activities suggest functional limitations, the ALJ was correct in finding that they contradict claims of totally debilitating impairment. The Commissioner's argument is not convincing.

The ALJ did not err in relying on Claimant's reported daily activities. The ALJ did, however, err in failing to explain how Claimant's limited domestic activities transferred to the workplace. The ALJ merely enumerated Claimant's daily activities and summarily concluded that "Claimant's allegations of disabling pain and other symptoms are not entirely credible." (Tr. 20.) The ALJ provided no additional analysis in reaching this conclusion. Thus the ALJ erred in providing a conclusory finding unsupported by a clear and convincing explanation, and the record reveals no obvious link between the Claimant's daily activities and the ALJ's credibility finding. Therefore, the court finds that the ALJ's determination regarding Claimant's activities was not supported by substantial evidence.

II.   Step Three Determination and Listing 1.04

ALJ erred in concluding that Claimant's conditions do not meet or equal listing 1.04. Claimant argues that he meets listing 1.04 and that the ALJ erred in her finding that Claimant did not meet the listing. Commissioner argues that Claimant, having the burden to prove disability, has not met that burden with respect to listing 1.04. Under the law, however, an ALJ must provide sufficient explanation for the ultimate disability determination. *Morgan*, 169 F.3d at 599. "An examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990) (internal citation omitted).

The ALJ first referenced listing 1.04 in performing the five-step process, and later the finding that Claimant did not meet the listing. (Tr. 41.) The ALJ attempted to explain her finding when she wrote:

> In making this finding, the undersigned considered listing number 1.04. Because there are no medical findings or suggestions in the medical record that any of the claimant's impairments meet the conditions or severity requirements for any listed impairment, they do not meet or medically equal a listing.

(Tr. 19.) Commissioner argues that *Gonzalez* excuses the lack of detail in the step three determination. *Gonzalez*, however, is not on point.

*Gonzalez* held that "[it] is unnecessary to require the Secretary . . . to state why the claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 12. *Gonzalez* does excuse an ALJ from addressing every different section of the list of impairments. *Id. Gonzalez*, however, does not excuse an ALJ from explaining how the Claimant fails to meet one relevant listing,

15

particularly where other findings by the ALJ appear to conflict. *See id.* (the Ninth Circuit excuses an ALJ from discussing every possible listing that a Claimant does not meet but the court does not excuse an ALJ from discussing a specific relevant listing.)

Unlike *Gonzales,* the ALJ here should have discussed and explained the conflict between her findings and the medical record. Furthermore, the ALJ should have discussed and explained how the Client did not meet listing 1.04 specifically. By contrast, in *Gonzales,* the medical record constituted substantial evidence that was congruent with the ALJ's determination in step three. Also, the ALJ's conclusory finding with respect to the listing was supported by substantial record evidence whereas, here, the ALJ's conclusory findings with respect to the listing lack evidentiary support. Moreover, this court observes that the ALJ's explanation here is perfunctory because it only repeats, verbatim and without additional analysis, the step three language used by the ALJ in *Gonzales.* Therefore, the ALJ did not provide sufficient analysis as to why listing 1.04 was not met.

Furthermore, the finding was not consistent with substantial evidence in the record. The record reveals the following: (1) nerve compression diagnosed and confirmed by CT-scan with contrast, (Tr. 234-241.); (2) neuro-anatomic distribution of pain, (Tr. 183, 197, 234, 276.); (3) limitation of motion of the spine, (Tr. 234.); (4) motor loss with associated muscle weakness (Tr. 183-84, 186, 200, 239.); (5) sensory or reflex loss (Tr. 182, 186.); and (6) a straight-leg test was performed and the result was positive. Additionally, the ALJ found no malingering by the Claimant (Tr. 18, 184.). The only conflicting evidence in the record is from Dr. Terri Robinson. She is an examining physician and based her opinion on a cursory exam of Claimant lasting only 23 minutes.

(Tr. 197.) Based on the record and the ALJ's credibility finding, the ALJ's determination regarding listing 1.04 was not supported by substantial evidence.

## *Conclusion*

For the reasons above stated, the Commissioner's decision should be REVERSED and REMANDED pursuant to 42 U.S.C. § 405(g) for an award of benefits with an onset date of January 1, 2008.

## *Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August, 13, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of July, 2013.

JOHN V. ACOSTA
United States Magistrate Judge